
# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AZCO BIOTECH INC., a Nevada Corporation; and J. ADAMS, an individual, | CASE NO. 12-CV-2599 BEN (DHB) |
| Plaintiffs, | **ORDER:** |
| vs. | **(1) GRANTING PLAINTIFFS' AMENDED MOTION FOR ORDER ALLOWING SURREPLY [ECF No. 19]** |
| | **(2) DENYING AS MOOT PLAINTIFFS' MOTION FOR ORDER ALLOWING SURREPLY [ECF No. 18]** |
| QIAGEN, N.V., a Netherlands holding company; STEVEN GORDON, an individual; JINGYUE JU, an individual; JERZY OLEJNIK, an individual; and INTELLIGENT BIO-SYSTEMS, INC., a Delaware Corporation; and DOES 1-50, inclusive, | **(3) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [ECF No. 10]** |
| Defendants. | |

# INTRODUCTION

This business dispute arises out of the acquisition of Intelligent Bio-Systems, Inc. ("IBS") by a subsidiary of Qiagen NV to the purported detriment a third company, Azco Biotech, Inc. ("Azco"). Plaintiffs are Azco and its chief executive officer, J. Adams. Defendants are Qiagen NV, IBS, and three individuals affiliated

with IBS—Steven Gordon, Jerzy Olejnik, and Jinyue Ju.[1]

Presently before the Court is Defendants' motion to dismiss certain claims pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). For the reasons stated below, the motion is **GRANTED IN PART AND DENIED IN PART.**[2]

## BACKGROUND

Azco is a Nevada corporation that provides instruments, reagents, and servicing for nucleic acid detection and synthesis. (Compl. ¶¶ 6, 23.) Adams is its chief executive officer and sole shareholder. (Compl. ¶ 1.) IBS is a Delaware corporation founded to commercialize DNA sequencing technologies and patents from Columbia University. (Compl. ¶ 9.) Gordon is IBS's chief executive officer, Olejnik is its vice president and chief technology officer, and Ju is a co-founder and director. (Compl. ¶¶ 10-12.) Together, Gordon, Olejnik, and Ju are the "Individual Defendants." Qiagen NV is a Dutch holding company. (Compl. ¶ 8.)

In March 2009, Azco became the exclusive worldwide source for a DNA sequencing machine called "the Polonator." (Compl. ¶ 24.) IBS held a patent for technology called Sequencing by Synthesis, or "SBS." (Compl. ¶ 26.) Azco approached IBS about using SBS technology in conjunction with the Polonator. (Compl. ¶ 28.)

Plaintiffs allege that the parties reached an agreement in 2011, as reflected by

---

[1] Plaintiffs use the spelling "Jiu." According to Defendants, the proper spelling is "Ju." The Court will use Defendants' spelling. The caption has been altered to reflect the change.

[2] Plaintiffs amended motion for leave to file a surreply is granted. The clerk is directed to file the proposed surreply that is attached as Exhibit A to ECF No. 19. The Court has considered the proposed surreply, Defendants' opposition and all accompanying evidence in resolving Defendants' motion to dismiss. Plaintiffs' initial motion for leave to file a surreply (ECF No. 18) is denied as moot.

Although the Court considers the surreply, it notes that Plaintiffs have improperly added a new party—"QIAGEN NORTH AMERICAN HOLDING[S], a California business entity, DBA QIAGEN, INC., a California business entity"— to the caption. Qiagen NV is the only Qiagen entity identified in the complaint. At this stage of the litigation, Plaintiffs may amend its pleading only with the opposing party's written consent or the court's leave. FED. R. CIV. P. 15(a)(2). The Court has not granted leave and there is no indication that the opposing parties consent to amendment. It also appears that the addition of a California entity as a defendant would destroy diversity and divest this Court of jurisdiction. Accordingly, the Court disregards Plaintiffs' modification to the caption.

a "Term Sheet."[3] (Compl. ¶ 31.) As part of that agreement, Azco would "kill" the Polonator and sell equipment utilizing IBS's software and fluidics under a new trade name, "Max-Seq Genome Sequencer." (Compl. ¶ 33.) Azco and IBS launched the Max-Seq "to great interest" in April of that year. (Compl. ¶¶ 34-35.) As agreed, Azco abandoned its efforts to sell or service the Polonator. (Compl. ¶ 35.)

In the months that followed, the companies grew closer, making "numerous oral agreements as to matters beyond the scope of the Term Sheet." (Compl. ¶ 74.) According to Plaintiffs, what began as a licensing deal morphed into an agreement "to work together as partners, and to share in the profits of their joint enterprise." (Compl. ¶ 42) Azco and IBS developed and promoted products together, appeared at trade shows together, and shared confidential information. According to Plaintiffs, "Adams not only allowed disclosure of Azco's confidential information to Gordon, he encouraged it in light of the many representations and promises by Gordon that IBS was committed to working with Azco for the long-term . . . and based on Adams's belief in the truth of Gordon's representations and promises that Adams and Gordon, through their respective companies, were partners, a representation that was made by Gordon many times between April 2011 and June 2012, not just to Adams, but to others at Azco, to potential customers, to purchasers of the MAX-Seq (and other jointly developed technologies), to the industry at large and to the general public." (Compl. ¶ 37.)

Despite a promising start, the relationship came to an end in June 2012 when Qiagen NV, "a large international conglomerate," acquired IBS for "as much as $138,000,000." (Compl. ¶ 1.) Before Plaintiffs learned of the deal, however, individuals at IBS "pick[ed] the brains" of Azco and Adams. (Compl. ¶ 50.) Plaintiffs claim that members of Ju's lab, at the direction of Qiagen NV, Gordon, and Ju, "made numerous calls to Azco asking for very detailed information about

---

[3] Plaintiffs indicate that the Term Sheet is attached to the Complaint as Exhibit A. It is not.

the technologies Azco had developed to enhance the IBS technology." (Compl. ¶¶ 11, 50.) Additionally, Olejnik, "without ever disclosing that IBS had been acquired by the competition," continued to participate in Azco's bi-monthly planning meetings where he was exposed to confidential information. (Compl. ¶ 51.) Olejnik requested, and was given, Azco's customer list. (Compl. ¶ 51.)

Plaintiffs claim that, in addition to their time, talent, and ideas, they invested more than $2 million to further the interests of the partnership. Qiagen NV allegedly acknowledged to Gordon that Plaintiffs were entitled to compensation. (Compl. ¶¶ 56, 58.) It never provided such compensation, however, and one month after Plaintiffs learned of the acquisition, Gordon terminated Plaintiffs' license to IBS's technology, purportedly at the behest of Qiagen NV. (Compl. ¶ 60.) Plaintiffs claim they were left "broke and struggling to rekindle the business they had abandoned for Defendants' benefit." (Compl. ¶ 5.)

On October 24, 2012, Plaintiffs commenced this action. They assert eighteen claims: (1) breach of written contract; (2) breach of oral contract; (3) breach of the implied covenant of good faith and fair dealing; (4) inducing breach of contract; (5) promissory estoppel; (6) promissory fraud (promise with no intent to perform); (7) fraud (deceit/intentional misrepresentation); (8) negligent misrepresentation; (9) breach of fiduciary duty; (10) aiding and abetting the breach of fiduciary duty; (11) intentional interference with prospective economic advantage; (12) negligent interference with prospective economic advantage; (13) unjust enrichment; (14) trade libel and defamation; (15) common count for goods and services rendered; (16) unfair business practices in violation of California Business and Professions Code § 17200 *et seq.*; (17) declaratory relief; and (18) injunctive relief. Claims 1-3 are asserted against IBS. Claims 4 and 10 are asserted against Qiagen NV and various "Doe" defendants. Claims 5-9 and 15 are asserted against IBS, the

1  Individual Defendants, and other "Does."[4]  Claims 11-14 and 16-18 are asserted
2  against all defendants.

3      On December 13, 2012, Defendants filed a Rule 12 motion to dismiss. (ECF
4  No. 10.)  It has two parts.  First, Qiagen NV moves to dismiss all claims against it
5  for lack of personal jurisdiction pursuant to Rule 12(b)(2).  Second, Defendants
6  move to dismiss certain claims as insufficiently pled pursuant to Rule 12(b)(6).

7      Plaintiffs filed an opposition[5] and Defendants filed a reply.  Plaintiffs moved
8  for leave to file a surreply to address new argument in Defendants' reply.  They
9  amended that motion the following day.  Defendants filed an opposition, and
10 Plaintiffs replied.

## LEGAL STANDARD

### 1.    Rule 12(b)(2)

13     When jurisdiction is challenged in a Rule 12(b)(2) motion, the burden is on
14 the plaintiff to show that the court has personal jurisdiction over the defendant.
15 *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 671-72 (9th Cir. 2012)
16 (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)).  In the
17 absence of an evidentiary hearing, the plaintiff need only make a "prima facie
18 showing of jurisdictional facts to withstand the motion to dismiss." *Id.* "The

19
20     [4] Generally, Doe pleading is disfavored in federal courts. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

21     [5] Plaintiffs' request judicial notice of ten exhibits—screen shots and documents from
22 government and private websites, such as Qiagen.com. Federal Rule of Evidence 201(b) provides that a court may take judicial notice of a fact that is not subject to reasonable dispute because it is generally known or can be accurately and readily determined from sources whose accuracy cannot reasonably
23 be questioned. "It is not uncommon for courts to take judicial notice of factual information found on the world wide web." *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007)
24 (citations omitted). However, "private corporate websites, particularly when describing their own business, generally are not the sorts of 'sources whose accuracy cannot reasonably be questioned,' .
25 . . that our judicial notice rule contemplates." *See Victaulic Co. v. Tieman*, 499 F.3d 227, 237 (3d Cir. 2007). Exhibit 1-6 are purportedly from Qiagen.com. The parties dispute whether Qiagen NV or a
26 Qiagen subsidiary operates this website. (*See* Reply at 5 n.1) In light of this dispute, the Court declines to take judicial notice of the printouts. Exhibits 7 appears to be a screen shot from ashg.org.
27 It is not properly authenticated, and the Court declines to take judicial notice of it. Exhibit 8-10 display information printed from official government web sites. The Court takes judicial notice of
28 these documents. Regardless of whether it has taken judicial notice of the facts therein, the Court considers all of the exhibits in its personal jurisdiction analysis.

plaintiff cannot 'simply rest on the bare allegations of its complaint,' but uncontroverted allegations in the complaint must be taken as true." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). The court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Data Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1284 (9th Cir. 1977). "In such a case, facts, not mere allegations, must be the touchstone." *Taylor v. Portland Paramount Corp.*, 383 F.2d 634, 639 (9th Cir. 1967). Conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor. *AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). "At the same time, however, the plaintiff must submit *admissible* evidence in support of its prima facie case." *Am. Inst. of Intradermal Cosmetics, Inc. v. Soc. of Permanent Cosmetic Prof'ls*, No. CV 12-06887, 2013 U.S. Dist. LEXIS 58138, at *12 (C.D. Cal. Apr. 16, 2013) (emphasis added).

## 2. Rule 12(b)(6)

A motion under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In federal court, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(2). A complaint is deficient if it fails to state a plausible claim for relief on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, allegations of fraud must satisfy the heightened pleading standard of Rule 9(b), which requires pleadings to "state with particularity the circumstances constituting fraud or mistake."

In resolving a motion brought pursuant to Rule 12(b)(6), the Court accepts all

well-pleaded allegations of material fact as true and construes them in a light most favorable to the nonmoving party. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). In addition to the complaint itself, the Court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## DISCUSSION

### I.  Personal Jurisdiction Over Qiagen NV

Qiagen NV asserts that it is not a proper party, that it has "virtually nonexistent contacts with California," and that, consequently, the claims against it should be dismissed for lack of personal jurisdiction. Having reviewed the complaint, the parties' briefs, and the supporting evidence, the Court concludes that Plaintiffs have not made a prima facie showing of personal jurisdiction over Qiagen NV.

A forum state's long-arm statute establishes the boundaries of a court's jurisdiction over nonresidents. "California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due process are the same." *Mavrix Photo, Inc.*, 647 F.3d at 1223. "Due process requires that to exercise jurisdiction over a non-resident defendant, the defendant 'have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Wash. Shoe*, 704 F.3d at 672 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The two forms of personal jurisdiction are "general" and "specific." *Mavrix*, 647 F.3d at 1223, 1227.

Plaintiffs allege upon "information and belief" that Qiagen NV is a Netherlands holding company that has an agent for service of process in California and that has been authorized to do business in California since 1988. (Compl. ¶ 8.)

1  Further, Plaintiffs allege that Qiagen NV, in conjunction with its purchase of IBS,
2  intentionally induced IBS to breach its agreements and fiduciary duties to Plaintiffs,
3  both California citizens. (Compl. ¶¶ 6, 7, 55.)

4      These allegations are controverted. As a matter of general business contacts,
5  Qiagen NV establishes that it is a Dutch holding company that conducts business
6  through its worldwide subsidiaries. (Backheuer Decl. ¶¶ 2-4.) It establishes that it
7  has no offices or employees in California; that it does not own or lease real estate in
8  California; that it does not pay California state taxes or any U.S. income, sales and
9  use, property, franchise, or business taxes; and that it does not manufacture,
10 distribute, package, invoice, ship, or sell products. (Backheuer Decl. ¶¶ 2-3.) As
11 for its alleged wrongdoing, Qiagen NV disputes the basis of Plaintiffs' allegations,
12 namely that it spearheaded the IBS purchase. (Backheuer Decl. ¶ 4.) Qiagen NV
13 establishes that the acquiring entity was Qiagen North American Holdings, Inc., a
14 California subsidiary of Qiagen US Financial Holdings (Luxembourg) S.a.r.l.,
15 which is itself a subsidiary of Qiagen NV. (Backheuer Decl. ¶ 4.) Qiagen NV
16 establishes that it does not directly own IBS, that it does not control IBS's
17 management, and that it is merely the "ultimate foreign parent corporation."
18 (Backheuer Decl. ¶¶ 4-5.)

19     Plaintiffs state that the Court may exercise general and specific jurisdiction
20 over Qiagen NV. In light of Qiagen NV's evidence, however, Plaintiffs cannot rest
21 on bare allegations of that parent company's California contacts. The Court must
22 decide whether Plaintiffs have made a prima facie showing, by affidavits or
23 otherwise, of jurisdictional *facts*.

24     **A.  General Jurisdiction**

25     General jurisdiction exists when a defendant engages in "continuous and
26 systematic general business contacts" that approximate physical presence in the
27 forum state. *Mavrix Photo, Inc.*, 647 F.3d at 1223-24. To determine whether
28 continuous and systematic contacts exist, the court examines "all of the defendant's

activities that impact the state, including whether the defendant makes sales, solicits or engages in business, serves the state's markets, designates an agent for service of process, holds a license, has employees, or is incorporated there." *Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1478 (9th Cir. 1986). The standard for general jurisdiction "is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger*, 374 F.3d at 801.

Plaintiffs argue that Qiagen NV is subject to general jurisdiction based on: (1) the contacts of Qiagen, Inc.,[6] a California-based subsidiary of Qiagen NV; (2) Qiagen NV's physical presence in California; (3) Qiagen NV's "interactive" web-site; and (4) Qiagen NV's attendance at tradeshows in California. For support, Plaintiffs rely primarily on excerpts from Qiagen NV's SEC Reports and screen shots from Qiagen.com.

### 1. Qiagen, Inc.

Plaintiffs contend that Qiagen NV's subsidiary, Qiagen Inc., has the necessary minimum contacts with California and that those contacts may be imputed to Qiagen NV. The Court is not persuaded.

"It is well-established that a parent-subsidiary relationship alone is insufficient to attribute the contacts of the subsidiary to the parent for jurisdictional purposes." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003). There are two exceptions to this general rule. If the subsidiary is either the alter ego or agent of the parent, imputation is permissible. *Id.*; *see also Does v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (noting that a parent corporation may be directly involved in the activities of its subsidiaries without incurring liability so long as that involvement is consistent with the parent's investor status). Here, Plaintiffs fail to make a prima facie showing that either

---

[6] Qiagen Inc. is not a party to this action.

exception applies.

The alter ego test is satisfied by a showing "(1) that there is such a unity of interest and ownership that the separate personalities [of the parent and subsidiary] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Compagnie Bruxelles Lambert*, 94 F.3d at 591 (citation omitted). Plaintiffs make a cursory statement that Qiagen Inc. is the alter ego of Qiagen NV, but they put forward no evidence, such as undercapitalization or a failure to observe corporate formalities, that suggests "such a unity of interest and ownership between [these entities] that their separate corporate personalities no longer exist." *Unocal*, 248 F.3d at 928.

"The agency test is satisfied by a showing that the subsidiary . . . performs services that are 'sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services.'" *Unocal*, 248 F.3d at 928 (quoting *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1405 (9th Cir. 1994)). Plaintiffs describe Qiagen Inc. as Qiagen NV's "California face," particularly with respect to product orders, technical service, literature requests, customer care, and job offers. To buttress their argument, Plaintiffs' submit screen shots from Qiagen.com which show, among other things, the Valencia, California address of Qiagen Inc. under the headings "Contact Us" and "Ordering USA." (Opp'n, Exhs. 1-5.) Plaintiffs also submit evidence that Qiagen Inc. was an exhibitor at the American Society of Human Genetics' 2012 annual meeting in California. (Opp'n, Exh. 7.) Plaintiffs contend that these functions are so important that if Qiagen Inc. disappeared, Qiagen NV would have to perform them.

Plaintiffs' evidence is insufficient. Qiagen NV is a holding company. (Compl. ¶ 8; Backheuer Decl. ¶ 4.) "As the Ninth Circuit has recognized, application of the agency theory to a holding company is inapt: 'in the case of a holding company the parent could simply hold another type of subsidiary, in which

case imputing the subsidiaries' jurisdictional contacts to the parent would be improper.'" *Monje v. Spin Master Inc.*, No. CV-09-1713, 2013 U.S. Dist LEXIS 76077, at *25-26 (D. Ariz. May 30, 2013) (quoting *Unocal*, 248 F.3d at 929). Plaintiffs assert, but fail to present evidence, that Qiagen NV—and not a different Qiagen subsidiary—would fill the role of Qiagen Inc. in that company's absence.

### 2. California Presence

Plaintiffs next suggest that Qiagen NV is not telling the truth when it denies having a physical presence in California. As evidence, they submit a Qiagen NV annual report, which mentions a facility in Valencia, California.[7] The Court finds this argument unpersuasive. The SEC report expressly ties the Valencia facility to Qiagen Inc. (Opp'n, Exh. 9 at 38.) That Qiagen NV mentioned it in the annual report means little for jurisdictional purposes. "The annual business reports of a foreign parent company often recite[] facts regarding the operation of its subsidiaries. '[C]onsolidating the activities of a subsidiary into the parent's reports is a common business practice' which does not justify the conclusion the U.S. subsidiaries are 'representative' of the foreign holding company." *Troll Busters LLC v. Roche Diagnostics GmbH*, No. 11-CV-56, 2011 WL 3859721, at *12 (S.D. Cal. Aug. 31, 2011) (quoting *Unocal*, 248 F.3d at 929). Plaintiffs fail to show why this case is different.

### 3. The Website

Plaintiffs next argue that Qiagen NV's operation of an "interactive," website—Qiagen.com—to sell products, promote its business, and advertise California job openings confers general jurisdiction. This argument fails for two reasons. First, Plaintiffs propound no evidence that Qiagen NV as opposed to a subsidiary owns or operates Qiagen.com. Second, and more problematic, is that the "operation of an interactive website—even a 'highly interactive' website—does not

---

[7] Plaintiffs state that the report also refers to facilities in Alameda, California and San Francisco, California. (Opp'n at 14.) The Court has reviewed the submitted document and sees no such references. (Opp'n, Exh. 9.)

confer general jurisdiction." *Mavrix Photo*, 647 F.3d at 1226; *see also CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076-77 (9th Cir. 2011) ("If the maintenance of an interactive website were sufficient to support general jurisdiction in every forum in which users interacted with the website, the eventual demise of all restrictions on the personal jurisdiction of state courts would be the inevitable result." (quotations omitted)). Plaintiffs' citations to authority are unavailing because those cases involved *specific jurisdiction* inquiries. Qiagen, Inc. cannot confer specific jurisdiction over Qiagen NV because Plaintiffs' causes of action have nothing to do with the website. See *Data Disc, Inc.*, 557 F.2d at 1287 (specific jurisdiction is based on "the nature and quality of the defendant's contacts in relation to the cause of action").

### 4. Trade shows

Lastly, Plaintiffs contend that Qiagen NV is subject to general jurisdiction because it attends trade shows and conferences in California. It submits a list of conferences, purportedly from the Qiagen.com website, spanning a nine-year period (2004-2013). (Opp'n, Exh. 6.) Sixteen of them (but no more than two per year) were in California.

This list does not support the exercise of general jurisdiction. First, it does not indicate which Qiagen entity attended the conferences and in what capacity. Other evidence suggests it was Qiagen Inc. (*See* Opp'n, Exh. 7.) Second, such appearances do not constitute substantial and continuous business contacts. *See, e.g., Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017-18 (9th Cir. 2009) (attendance at "four conferences over five years constitute only sporadic and insubstantial contacts"); *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993) (attendance at five medical conferences in California over four years did not rise to the level of systematic and continuous contacts); *Reiffin v. Microsoft Corp.*, No. C 11-03505, 2012 U.S. Dist. LEXIS 53220, at *10-11 (N.D. Cal. April 16, 2012) (attendance at "several California-based conferences on behalf

of Microsoft over the years" is "more occasional than continuous, and more infrequent than systematic"). Plaintiffs provide no authority that suggests otherwise.

## B. Specific Jurisdiction

Plaintiffs argue in the alternative that the Court has specific jurisdiction over Qiagen NV. Specific jurisdiction has three requirements: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable." *CollegeSource, Inc.*, 653 F.3d at 1076 (citing *Schwarzenegger*, 374 F.3d at 802). It is Plaintiffs' burden to satisfy prongs one and two. *Wash. Shoe*, 704 F.3d at 672. Only if they succeed does the burden shift to the Defendants to set forth a "'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)). If Plaintiffs fail to satisfy the first two prongs, the court cannot assert specific jurisdiction.

A showing under the first prong "consists of evidence of the defendant's actions outside the forum state that are directed at the forum. . . ." *Schwarzenegger*, 374 F.3d at 803. Plaintiffs theorize in their briefing that Qiagen NV must have orchestrated the actions giving rise to this action. (Pls.' Reply in Supp. of Order Allowing Surreply at 3, ECF No. 21.) Problematically, though, Plaintiffs fail to present evidence of Qiagen NV's direct involvement. Plaintiffs' evidence shows, at most, that two individuals associated with a Qiagen entity in Germany had post-acquisition discussions with Azco regarding IBS. (Adams Decl. ¶¶ 5, 10.) Adams' unsupported characterization of these individuals as employees of *Qiagen NV* is of

- 13 -

no moment given Qiagen NV's declaration that they were employed by *Qiagen GmbH*, a separate and distinct entity from Qiagen NV. (Von Hugo Decl. ¶¶ 2-3.) Plaintiffs' own evidence (Qiagen NV's SEC Report) indicates that the company's executive office is in the Netherlands. Put simply, Plaintiffs' evidence does not substantiate its purposeful direction allegations against Qiagen NV. Since Plaintiffs fail to make a satisfactory showing under prong one, the Court's analysis ends here. Qiagen NV's motion to dismiss for lack of personal jurisdiction is granted. Therefore, all claims against that entity are dismissed.

### C. Jurisdictional Discovery

Plaintiffs state that, at a minimum, the Court should permit jurisdictional discovery so that they can determine which Qiagen entity to sue. The Court declines. Whether to permit jurisdictional discovery is a matter within the Court's discretion. *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977). "Where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery . . . ." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006). The basis for Plaintiffs' request is their unsupported allegation that Qiagen NV was pulling the strings. The Court will not subject a foreign entity to jurisdictional discovery "based on little more than a hunch that it might yield jurisdictionally relevant facts." *Boshetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008).

### II. Sufficiency of the Pleadings

Pursuant to Rule 12(b)(6), the Individual Defendants move to dismiss all claims against them, and IBS moves to dismiss claims 6-8, 13-16 and 18.[8]

### A. Individual Liability (in general)

The Individual Defendants—Gordon, Ju, and Olejnik—make two arguments

---

[8] IBS does not move to dismiss claims 1-3, 5, 9, 11-12 or 17. Claims 4 and 10 are not asserted against IBS.

for the dismissal of the claims asserted against them.[9]  First, they suggest that, as a matter of law, they cannot be personally liable for actions taken as IBS founders, officers and employees. (Mot. at 10.)  Second, they argue that Plaintiffs fail to plead facts supportive of individual liability. (Mot. at 11.)

The Court rejects the first point.  California law provides that directors and officers may become liable for a corporation's tortious conduct if they "directly ordered, authorized or participated in the tortious conduct.'" *Wyatt v. Union Mortg. Co.*, 24 Cal. 3d 773, 785 (1979).  Plaintiffs have alleged at least some acts undertaken by each individual defendant.  Liability, in other words, does not appear to be premised solely on their status with the corporation.  The fact that these defendants were acting in their official capacities is not a sufficient basis for a blanket dismissal.

The Court will address the second argument—whether Plaintiffs' factual allegations  support individual liability—on a claim-by-claim basis.  However, it is helpful to make a general point at the outset. To subject Gordon, Ju, and Olejnik to personal liability, Plaintiffs must plausibly allege that each directly ordered, authorized, or participated in the tortious conduct.  Plaintiffs make the boilerplate assertion that each defendant was the "alter ego" of every other defendant, but they do not allege the elements of alter ego liability or facts supporting those elements.  This will not suffice. *See Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003) ("Conclusory allegations of 'alter ego' status are insufficient to state a claim.")

Also insufficient is Plaintiffs' threadbare assertion that each defendant was the agent of every other defendant. (Compl. ¶ 15.)  For some, an agency relationship may be self-evident.  But not for all.  Plaintiffs do not plausibly allege, for example, that IBS, the corporate principal, was the agent of Gordon, Ju, or Olejnik in their personal capacities.  "The Federal Rules do not require courts to

---

[9] Claims 5-9 and 11-18 are asserted against the Individual Defendants.

credit a complaint's conclusory statements without reference to its factual context." *Iqbal*, 556 U.S. at 686.

With that in mind, the Court now turns to the individual claims.

### B.    Promissory Estoppel (Claim 5)

Plaintiffs' fifth claim for relief is for promissory estoppel. It is aimed at the IBS and the Individual Defendants. The Individual Defendants move to dismiss on the basis that they cannot be held personally liable for any alleged promises that IBS failed to keep. Plaintiffs do not directly address the argument in their opposition brief, so the Court treats it as unopposed. The Court also agrees with the Individual Defendants on the merits.

Promissory estoppel claims are "basically the same as contract actions, but only missing the consideration element. . . ." *US Ecology, Inc. v. California*, 129 Cal. App. 4th 887, 903 (2005). "Under this doctrine a promisor is bound when he should reasonably expect a substantial change of position, either by act or forbearance, in reliance on his promise, if injustice can be avoided only by its enforcement." *Youngman v. Nevada Irrigation Dist.*, 70 Cal. 2d 240, 249 (1969). Directors and officers who contract on behalf of a corporation are not personally liable unless they contract on their own behalf purport to bind themselves individually. *See U.S. Liability Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 595 (1970).

Plaintiffs allege that the IBS Defendants made but failed to keep certain promises, namely that the Azco license for IBS's technology was perpetual; that if Azco stopped selling its Polonator product and concentrated on exploiting IBS's technology, it would share jointly in the profits; and that the Azco/IBS relationship would continue unless jointly terminated or terminated for good cause. (Compl. ¶ 88.) Plaintiffs allege they reasonably relied on these promises. Plaintiffs allege they were damaged when the IBS Defendants did not perform.

These allegations are insufficient to subject the Individual Defendants to

personal liability. First, Plaintiffs lump the IBS Defendants together but fail to specifically allege that Olejnik and Ju made any of the alleged representations. Second, there is no indication that any individual defendant made a promise on his own behalf or purported to bind himself individually. To the contrary, Plaintiffs allege that each defendant "performed the acts as described in this Complaint while acting within the course and scope of his, her or its authority[.]" (*See* Compl. ¶ 15.) This is fatal to Plaintiffs' claim.

For those reasons, the Court grants the movants' motion to dismiss. Plaintiffs' claim for promissory estoppel is dismissed as to the Individual Defendants.

### C. Fraud and Misrepresentation (Claims 6-8)

Plaintiffs next assert claims for promissory fraud, intentional misrepresentation, and negligent misrepresentation against the IBS Defendants. These claims are based on the theory that the IBS Defendants made certain misrepresentations to induce Plaintiffs into investing in IBS's technology and revealing confidential information. Each of these defendants move to dismiss on the basis that the allegations lack the specificity required by Federal Rule of Civil Procedure 9(b). Plaintiffs contend that the allegations are sufficiently detailed. The Court agrees with Plaintiffs.

Claims sounding in fraud, including negligent misrepresentation, are subject to Rule 9(b). *See, e.g., Deitz v. Comcast Corp.*, No. C 09-06352, 2006 WL 3782902, at *6 (N.D. Cal. Dec. 21, 2006). Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "To state a claim of fraudulent conduct, which carries substantial reputational costs, plaintiffs must provide each and every defendant with enough information to enable them 'to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with.'" *Pegasus Holdings v. Veterinary Ctrs. of Am., Inc.*, 38 F. Supp. 2d 1158, 1163 (C.D. Cal.

1998) (quoting *In re Worlds of Wonder Sec. Litig.*, 694 F. Supp. 1427, 1433 (N.D. Cal. 1988)). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). When a fraud suit involves multiple defendants, "a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[] in the alleged fraudulent scheme." *Swartz v. KPMG LLG*, 476 F.3d 756, 765 (9th Cir. 2007) (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989)).

Plaintiffs broadly allege that the IBS Defendants, but primarily Gordon, made statements about IBS's commitment to Azco without intending to honor them or to share in the profits. (Compl. ¶¶ 96, 97, 104). By and large, however, the complaint lacks detail. It does not identify when, where, and to whom specific statements were made, except in the most general sense. The "IBS Defendants" are treated interchangeably. More is required. *See Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1315 (N.D. Cal. 1997) ("Since fraud must be alleged with particularity, a general allegation that all Individual Defendants directed that the alleged fraudulent statements be made is insufficient to assert liability upon persons who did not make the statements.").

Despite these shortcomings, the Court finds a narrow category of misrepresentations to be sufficiently pled. Plaintiffs allege that during the brief period between the consummation of the IBS/Qiagen transaction and its disclosure to Azco, Ju (through members of his lab) and Olejnik requested and obtained information from Azco under the false pretense that IBS was still Plaintiffs' partner. (Compl. ¶¶ 50-51.) Plaintiffs allege that they did so on orders from Gordon. (Compl. ¶ 50.) In effect, these were misrepresentations by omission. Plaintiffs provide the time, place, and nature of these misrepresentations and identify the role of each individual in the scheme. From these facts, Defendants know what conduct they are charged with and can prepare an adequate answer.

Therefore, the Court denies the motion to dismiss Plaintiffs' claims for promissory fraud, intentional misrepresentation, and negligent misrepresentation insofar as they are based on these alleged misrepresentations.

### D.    Breach of Fiduciary Duty (Claim 9)

Plaintiffs next assert a claim for breach of fiduciary duty against the IBS and the Individual Defendants. The Individual Defendants claim that dismissal is required because the complaint does not allege that they personally owed any duty, separate from any duty owed by IBS. Plaintiffs do not address this argument in their opposition brief, so the Court treats it as unopposed. Moreover, the Court agrees with the Individual Defendants on the merits.

Plaintiffs allege that the "IBS Defendants" owed them a fiduciary duty because: (1) they were partners, and (2) because the nature of their relationship was one of trust and confidence. (Compl. ¶ 113.) In short, they treat IBS and the IBS Defendants interchangeably and label them all fiduciaries. The Court is not convinced. The complaint repeatedly refer to the "IBS/Azco" partnership, not a partnership between Azco and Gordon, Ju, or Olejnik. (Compl. ¶¶ 43, 47, 119). The complaint specifically alleges it all that the Individual Defendants were acting "at all times" as agents of IBS. (Compl. ¶ 15.) Plaintiffs put forward no facts from which the Court can infer that the Individual Defendants owed fiduciary duties independent of any fiduciary duty owed by the corporate entity. Accordingly, the cause of action fails against them.

To the extent Plaintiffs are suggesting that the Individual Defendants aided and abetted a breach of fiduciary duty by IBS (*see* Compl. ¶ 115), the claim is not permissible. "California law . . . does not permit a claim against individual officers and directors for aiding and abetting a corporation in this context." *Nasutavicus v. Nat'l P'ship Invs. Corp.*, No. CV 98-7035, 2002 U.S. Dist. LEXIS 28545, at *12-14 (C.D. Cal. Oct. 7, 2002); *see also Janken v. GM Hughes Elec.*, 46 Cal. App. 4th 55, 77-78 (1996) (citations omitted) ("The concept of aiding and abetting involves two

separate persons, one helping the other. . . . [S]ince a corporation can act only through its employees, the element of concert is missing in the 'aiding and abetting' context just as in the conspiracy context.").

Accordingly, the Court grants the movants' motion to dismiss. Plaintiffs' claim for breach of fiduciary duty is dismissed as to the Individual Defendants.

### E.    Tortious Interference (Claims 11, 12)

Plaintiffs assert claims of tortious interference with prospective economic advantage—both intentional (Claim 11) and negligent (Claim 12)—against all defendants. The Individual Defendants move to dismiss. The Court grants their motion and *sua sponte* dismisses the claims against IBS.

A claim for intentional interference has five elements: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003) (quotations omitted). "For negligent interference, wrongful conduct as defined by *Korea Supply* is still required." *Impeva Labs, Inc. v. Sys. Planning Corp.*, No. 12-CV-125, 2012 WL 3647716, at *6 (N.D. Cal. 2012). "But in place of the intentional conduct requirement, the plaintiff must show that the defendant owed the plaintiff a duty of care which was breached by the defendant's negligent conduct." *Id.*

Plaintiffs allege their economic relationships were damaged when Defendants: (1) wrongfully terminated their license with IBS; (2) told others about the revocation; and (3) threatened Plaintiffs with legal action should they "seek to exploit their rights" pursuant to the license. (Compl. ¶¶ 132-33.) As is often the case in the complaint, Plaintiffs treat IBS and the Individual Defendants interchangeably.

- 20 -

In the Court's view, these claims fail as a matter of law. The alleged wrongdoing arises out of the contractual breach. Put differently, Plaintiffs are seeking to recover in tort for what is fundamentally a contract claim. Under California law, this is not permitted. "[A] breach of contract claim cannot be transmuted into tort liability by claiming that the breach interfered with the promisee's business," even when a party breaches to put the non-breaching party out of business and rid itself of a competitor. *JRS Products, Inc.*, 115 Cal. App. 4th at 182-83. "[M]otive, regardless of how malevolent, remains irrelevant to a breach of contract claim and does not convert a contract action into a tort claim exposing the breaching party to liability for punitive damages." *Id.* at 182.

Because the "essential nature" of the conduct cited in support of this claim sounds in contract, Plaintiffs' remedy is limited to contract damages. *Id.* at 182. Accordingly, the Court grants the movants' motion to dismiss and *sua sponte* dismisses the claims against IBS. *See Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim *sua sponte* under Fed. R. Civ. P. 12(b)(6). . . . Such a dismissal may be made without notice where the claimant cannot possibly win relief.")

## F. Unjust Enrichment (Claim 13)

Plaintiffs next assert a claim for unjust enrichment. The Individual Defendants contend that dismissal is required because unjust enrichment is not an independent cause of action in California. Alternatively, they argue that Plaintiffs fail to allege any facts that they (as opposed to IBS) unjustly profited at Plaintiffs' expense.

"[T]he elements for a claim of unjust enrichment [are] receipt of a benefit and unjust retention of the benefit at the expense of another." *Lectrodryer v. Seoulbank*, 77 Cal. App. 4th 723, 726 (2000) (citing *First Nationwide Savings v. Perry*, 11 Cal. App. 4th 1657, 1662-63 (1992)). "California courts 'appear to be split on whether unjust enrichment can be an independent claim or merely an equitable remedy.'"

*Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1270 (C.D. Cal. 2007) (quoting *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007). The Court need not resolve the conflict here, however, because Plaintiffs' fail to state a claim.

In the complaint, Plaintiffs broadly proclaim that "Defendants have been unjustly enriched at the expense of Plaintiffs." (Compl. ¶ 146.) Plaintiffs fail to differentiate between the defendants. In so doing, they fail to allege the Individual Defendants *personally* benefitted from the alleged wrongful conduct and what benefit they unjustly retained at Plaintiffs' expense. Plaintiffs do not address this argument in their opposition brief, so the Court treats it as unopposed. Therefore, the Court grants the movants' motion to dismiss. Plaintiffs' unjust enrichment claim is dismissed as to the Individual Defendants.

### G. Trade Libel/Defamation (Claim 14)

Plaintiffs next assert a claim for trade libel and defamation. IBS and the Individual Defendants contend that dismissal is required because the claims are not pled with the requisite particularity. The Court agrees.

Technically, defamation and trade libel are distinct torts. Both, however, must be pled with specificity. *See Upper Deck Int'l B.V. v. Upper Deck Co.*, No. 11-CV-1741, 2012 WL 1713453, at *10 (S.D. Cal. May 15, 2012); *First Advantage Background Servs. Corp. v. Private Eyes, Inc.*, 569 F. Supp. 2d 929, 937 (N.D. Cal. 2008). "At a minimum, necessary defamation allegations must identify the time and place of publication as well as the speaker, the recipient of the statement, the substance of the statements and, in the case of a trade libel claim, special damages." *Eldorado Stone, LLC v. Renaissance Stone, Inc.*, No. 04-CV-2562, 2005 WL 5517731, at *3 (S.D. Cal. Aug. 10, 2005) (citing 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FED. PRAC. AND PROC.: Civil 3d, § 1309 (2004)).

Plaintiffs fail to meet their pleading burden under either tort. They allege that

Defendants published "various defamatory statements"[10] to "numerous individuals and entities in the biotech and life sciences industry." (Compl. ¶ 150.) What is missing are the particulars, i.e. the time and place of the alleged publications, the identities of the speakers, and specific recipients. Plaintiffs also fail to plead special damages. *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1046-47 (C.D. Cal. 1998) ("[U]nder California law, a cause of action for damages for trade libel requires pleading and proof of special damages in the form of pecuniary loss."). Plaintiffs' bare allegation that they have been "damaged in an amount to be proven at trial" does not meet the requirements of Federal Rule of Civil Procedure 9(g), which provides that "[w]hen items of special damages are claimed, they shall be specifically stated." Accordingly, the Court grants movants' motion to dismiss. The libel-related claims are dismissed against all defendants.[11]

## H.  Common Count (Claim 15)

Plaintiffs' fifteenth claim is cast as a common count for goods delivered and services rendered from March 2011 through June 2012. Plaintiffs, by incorporating all previous allegations, effectively claim that they are owed the reasonable value of the services rendered and goods provided to IBS due to IBS's contractual breaches. Defendants move to dismiss on the grounds that a common count is improper. The Court agrees.

"A common count is not a specific cause of action. . . . [R]ather, it is a simplified form of pleading normally used to aver the existence of various forms of monetary indebtedness, including that arising from an alleged duty to make restitution under an assumpsit theory." *McBride v. Boughton*, 123 Cal. App. 4th

---

[10]  Defendants allegedly stated, for example, that: (1) that Azco never had a contract or license with IBS; (2) that whatever rights it had relative to the SBS technology had been revoked; (3) that Plaintiffs were not authorized to sell or service the technology; and (4) that Azco and IBS were never partners as Azco represented it. (Compl. ¶ 150.)

[11]  Plaintiffs are advised that if they choose to amend this claim, the defamatory torts of slander and libel are distinct from "trade libel" and must be treated individually. *Isuzu Motors Ltd.*, 12 F. Supp. 2d at 1044.

379, 394 (2004). The essential allegations are (1) indebtedness, (2) consideration, and (3) nonpayment. *Eurodrip, USA, Inc. v. B&B Drop Irrigation, Inc.*, No. 09-CV-00716, 2009 U.S. Dist. LEXIS 70394, at *10 (E.D. Cal. July 31, 2009). "[W]hen the common count is based on an express contract, the element of indebtedness is not satisfied where the plaintiff seeks damages for breach *or where the obligation of the defendant is something other than the payment of money.*" *Mike Nelson Co., Inc. v. Hathaway*, No. 05-0208, 2005 WL 2179310, at *5 (E.D. Cal. Sept. 8, 2005) (emphasis added).

Here, Plaintiffs allege that they are owed money for goods delivered and services rendered to IBS. Plaintiffs never allege, however, that IBS's obligation under the agreements was to *pay money* for goods or services. Rather, the essence of the complaint is that IBS agreed to provide a license for its technology and to work jointly with Azco in various respects. That IBS did not follow through is not sufficient basis on which to bring an action on a common count. *See Willett & Burr v. Alpert*, 181 Cal. 652, 662 (1919) ("[I]t is a well-settled rule that an action upon a common count will not be permitted in such a case as this, where there is an express contract to do something else than pay money, and damages are sought because of the failure of the defendant to do that something else."). The Court grants the movants' motion to dismiss. The fifteenth claim cast as a common count for goods delivered and services rendered is dismissed.

## I. Unfair Business Practices (Claim 16)

Plaintiffs assert a claim against all defendants under California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 ("UCL"). IBS and the Individual Defendants contend that dismissal is required because Plaintiffs do not plead the money or property they allegedly lost as a result of any unfair business practices. The Court agrees in part.

To state a UCL claim, Plaintiffs must allege they "suffered injury in fact and ha[ve] lost money or property." Cal. Bus. & Prof. Code § 17204. Because

1 "economic injury is itself a form of injury in fact, proof of lost money or property

2 will largely overlap with proof of injury in fact." *Kwikset Corp. v. Superior Court*,

3 51 Cal. 4th 310, 325 (2011). Plaintiffs allege no facts specific to their UCL claim;

4 rather they incorporate all previous allegations and state generally that "Defendants

5 have engaged in a pattern of unfair and unlawful business practices." (Compl.

6 ¶ 159.) This is permissible, as "[t]he UCL incorporates other laws and treats

7 violations of those laws as unlawful business practices independently actionable

8 under state law." *Barocio v. Bank of Amer., N.A.*, Case No. C 11-5636 SBA, 2012

9 WL 3945535, at *8 (N.D. Cal. Sept. 10, 2012) (citing *Chabner v. United Omaha*

10 *Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000)). "California courts have not

11 foreclosed common law theories as a basis for actions pursuant to [the UCL]."

12 *Mercado v. Allstate Ins. Co.*, 340 F.3d 824, 828 n.3 (9th Cir. 2003).

13     Plaintiffs' allegations of contractual breach by IBS are a sufficient predicate

14 for unlawful business practices. *In re Facebook PPC Adver. Litig.*, 709 F. Supp. 2d

15 762, 771 (N.D. Cal. Apr. 22, 2010). In conjunction with those claims, Plaintiffs

16 allege pecuniary injury. Therefore, Plaintiffs have sufficiently alleged injury against

17 IBS.

18     As discussed above, the Court is allowing claims 6-8 to proceed against the

19 Individual Defendants to the extent they are premised on post-acquisition

20 misrepresentations to obtain confidential information. Whether the loss of that

21 information constitutes a loss of "property," however, cannot be discerned from the

22 complaint. *See Sunpower Corp. v. Colarcity Corp.*, No. 12-CV-00694, 2012 U.S.

23 Dist. LEXIS 176284, at *16 (N.D. Cal. Dec. 11, 2012) ("In order for the taking of

24 information to constitute wrongdoing, the information must be property.

25 Information is not property unless some 'positive law' makes it so."). At this

26 juncture, the Court cannot draw a reasonable inference that Plaintiffs lost money or

27 property as a result of the Individual Defendants' actionable misrepresentations.

28 Therefore, Plaintiffs have not sufficiently alleged standing to bring UCL claims

1 against them.

2     The motion to dismiss the UCL claim is denied as to IBS and granted as to

3 the Individual Defendants.

4     **J.    Declaratory Relief (Claim 17)**

5     Plaintiffs next seek a declaration of their rights under the Term Sheet and

6 subsequent oral agreements. (Compl. ¶¶ 162- 66.)  The Individual Defendants move

7 to dismiss on the grounds that they are not parties to those alleged agreements.  The

8 Court agrees.

9     Declaratory relief is only appropriate where there is an actual case or

10 controversy within the Court's jurisdiction. *Principal Life Ins. Co. v. Robinson*, 394

11 F.3d 665, 669 (9th Cir. 2005).  With respect to the alleged agreements, Plaintiffs

12 have failed to allege facts demonstrating the existence of an actual controversy

13 between Plaintiffs and the Individual Defendants.  The Term Sheet was allegedly

14 "negotiated and agreed upon by Azco through Adams and IBS through Gordon."

15 (Compl. ¶ 164.)  The oral agreements purportedly amended the Term Sheet.

16 (Compl. ¶164.)  Plaintiffs never allege that the Individual Defendants purported to

17 bind themselves individually.  Accordingly, the Court grants the movants' motion to

18 dismiss.  Plaintiffs' claim for declaratory relief is dismissed as to the Individual

19 Defendants.

20     **K    Injunctive relief (Claim 18)**

21     Finally, Plaintiffs allege a claim for injunctive relief.  Defendants move to

22 dismiss on the grounds that injunctive relief is a remedy, not a claim.  The Court

23 agrees. *See Sullivan v. JP Morgan Chase Bank, NA*, 725 F. Supp. 2d 1087, 1099

24 (E.D. Cal. 2010) ("Under federal law, an injunction is a remedy, not a claim in and

25 of itself.  Similarly, under California law, an injunction is a remedy, not a cause of

26 action." (citations omitted)).  Accordingly, this claim is dismissed with prejudice.

27 //

28 //

# CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.

**IT IS HEREBY ORDERED** that Qiagen NV's motion to dismiss for lack of personal jurisdiction is granted. The clerk is directed to terminate Quagen NV from the case.

**IT IS FURTHER ORDERED** that:

(1) The motion to dismiss claim five (Promissory Estoppel) is **GRANTED** as to the Individual Defendants.

(2) The motion to dismiss claims six (Promissory Fraud), seven (Intentional Misrepresentation), and eight (Negligent Misrepresentation) against the IBS Defendants is **DENIED**.

(3) The motion to dismiss claim nine (Breach of Fiduciary Duty) is **GRANTED** as to the Individual Defendants.

(4) The motion to dismiss claims eleven (Intentional Interference with Prospective Economic Advantage) and twelve (Negligent Interference with Economic Advantage) is **GRANTED** as to the Individual Defendants. The Court *sua sponte* dismisses the claims against IBS.

(5) The motion to dismiss claim thirteen (Unjust Enrichment) is **GRANTED** as to the Individual Defendants.

(6) The motion to dismiss claim fourteen (Trade Libel/Defamation) is **GRANTED**.

(7) The motion to dismiss claim fifteen (Common Count) is **GRANTED**.

(8) The motion to dismiss claim sixteen (Unfair Business Practices) is **DENIED** as to IBS and **GRANTED** as to the Individual Defendants.

(9) The motion to dismiss claim seventeen (Declaratory Relief) is **GRANTED** as to the Individual Defendants.

(10) The motion to dismiss claim 18 (Injunctive Relief) is **GRANTED**.

All dismissals except for claim 18 are without prejudice. Any amendment to the complaint, if any, must be filed, within 21 days from the date this Order is filed. No new claims or parties may be added without leave of court.

**IT IS SO ORDERED**.

DATED: _____, 2013

HON. ROGER T. BENITEZ
United States District Court Judge

12cv2599