Daniel T. Pascucci (SBN 166780)
dtpascucci@mintz.com
Eric J. Eastham (SBN 261048)
ejeastham@mintz.com
Justin S. Nahama (SBN 281087)
jsnahama@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Telephone: (858) 314-1500
Facsimile: (858) 314-1501

Matthew C. Hurley (*admitted pro hac vice*)
mhurley@mintz.com
Brian P. Dunphy (*admitted pro hac vice*)
bdunphy@mintz.com
Sean Grammel (*admitted pro hac vice*)
smgrammel@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
One Financial Center
Boston, MA 02111
Telephone: (617) 542-6000
Facsimile: (617) 542-2241

Attorneys for Defendants

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AZCO BIOTECH INC., a Nevada Corporation; and J. ADAMS, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>STEVEN GORDON, an individual; JINGYUE JU, an individual; JERZY OLEJNIK, an individual; and INTELLIGENT BIO-SYSTEMS, INC., a Delaware Corporation; and DOES 1-50, inclusive,<br><br>Defendants.<br><br>AND RELATED COUNTER-CLAIMS. | Case No. 3:12-cv-02599-BEN-DHB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF IBS's MOTION *IN LIMINE* TO EXCLUDE EVIDENCE ABOUT PLAINTIFFS' LOST PROFITS**<br><br>The Honorable Roger Benitez<br><br>Complaint Filed:  October 24, 2012<br><br>Pretrial Conference: September 14, 2015<br>Conference Time: 10:30 AM<br>Courtroom: 5A<br><br>**ORAL ARGUMENT REQUESTED SUBJECT TO COURT APPROVAL** |

1

## INTRODUCTION

Azco intends to offer lay and expert testimony that it has incurred "lost profit" damages exceeding $15 million.[1] But this is not a lost profits case. Because the alleged oral agreement was non-exclusive, IBS was under no obligation to sell a certain percentage of its products through Azco, and therefore it is pure speculation to predict how many units IBS would have sold through Azco, other distributors, or by itself. The alleged oral agreement, moreover, did not obligate IBS to continue selling the products covered by the agreement, and thus any testimony on lost profits would necessarily ignore the fact that IBS was always free to discontinue a product line altogether. Finally, future lost profits are not recoverable given that either party could terminate their non-exclusive distribution relationship upon reasonable notice, with or without cause. For all of these reasons, testimony on lost profits, from Plaintiffs' expert or anyone else, should be prohibited. Rather than assisting the jury's understanding of the issues in the case, testimony about lost profits would confuse the issues, mislead the jury, waste time, and unfairly prejudice IBS.

The Court should not permit Plaintiffs' expert Brian Buss, or any other witness including Plaintiff J Adams, to testify that Plaintiffs have lost profit damages, or permit Plaintiffs' counsel to argue that Plaintiffs' have suffered "lost profit" damages at trial.

## BACKGROUND

Azco is a small, self-described "used instruments" company that has never profitably distributed a DNA sequencer. Before Azco first contacted IBS, it struggled to keep its doors open and did not turn a profit.[2] Before reaching out to IBS, Azco had tried to distribute another manufacturer's DNA sequencer, called the Polonator,

---

[1] IBS has filed a motion *in limine* to exclude the opinion of Plaintiffs' damages expert, Mr. Buss, simultaneously with this Motion.
[2] Grammel Decl., Exhibit A, Deposition Transcript of Brian Buss ("Buss Depo."), at 117:3—119:7; Grammel Decl., Exhibit B.

2

but that instrument ended up catching fire in customers' laboratories.[3/] Azco hoped to distribute IBS's products, the MAX-Seq and MINI-20, because of the innovative technology that IBS had developed.[4/]

Enthusiastic about IBS's products, Azco was eager to begin selling immediately after the parties first met and starting working on promotional materials and website designs even before receiving any initial response to the first draft Term Sheet.[5/] Azco submitted ambitious sales projections in the first of the three draft Term Sheets exchanged, and then attended some trade shows to seek out customers.[6/] Despite Azco's enthusiasm, it completed the sale of only one MAX-Seq, to a customer in Korea (and unfortunately that one unit experienced significant problems).[7/] Azco was compensated for its one sale.[8/]

Throughout 2011 and 2012, IBS continued to develop its technology, specifically the MINI-20. In December 2011, IBS submitted a grant application related to the MINI-20 with revenue forecasts, adding at the time that sales were "hard to predict."[9/] IBS detailed sixteen assumptions that were made in order to generate its revenue forecasts.[10/] In January 2012, IBS sold an "early access" MINI instrument to the University of New Mexico, noting in the quotation that the MINI was a "new technology."[11/] Around the same time, IBS began discussions with QIAGEN about a potential acquisition, a deal which then closed in April 2012.

---

[3/] *See* Grammel Decl., Exhibit C. Some of Azco's Polonator customers refused to pay for their machines because of these problems, and Azco has claimed that these problems damaged its reputation in the marketplace
[4/] Grammel Decl., Exhibit D.
[5/] Grammel Decl., Exhibit E.
[6/] Grammel Decl., Exhibit F; Grammel Decl, Exhibit G.
[7/] *See* Order on Summary Judgment, Dkt. No. 111, at 4; Grammel Decl., Exhibit A, at 114:4—115:5.
[8/] *See* Order on Summary Judgment, at 4.
[9/] Grammel Decl., Exhibit H.
[10/] *Id.*
[11/] Grammel Decl., Exhibit I; Grammel Decl., Exhibit J.

3

1  In the summer of 2012, IBS decided to stop development of the MAX-Seq, 2 only one of which had been sold. Besides the sale of the MAX to the Korean 3 customer and the MINI to the University of New Mexico, no other sales of the MAX-4 Seq or MINI-20 were ever completed. Later, in July 2012, IBS terminated any non-5 exclusive distribution relationship it had with Azco, leading to this lawsuit.

6  Plaintiffs intend to introduce both expert and lay testimony about the damages 7 allegedly resulting from that termination. In their pretrial memorandum, Plaintiffs 8 claim that their damages are "no less than $15 million."[12] This echoes the report 9 submitted by Plaintiffs' expert witness, Brian Buss, who opines that Plaintiffs' lost 10 profits total $15 million.[13]

11  In addition to this expert testimony, Plaintiff J Adams testified at his 12 deposition, which was taken after the disclosure of Mr. Buss's report, that he believed 13 Plaintiffs had suffered lost profits of up to $100 million.[14] This mirrors Azco's claim 14 of damages in the Complaint, where they seek over $100 million.[15] Mr. Adams 15 estimates damages by assuming that Azco would earn a certain share of the next-16 generation sequencer market. According to Mr. Adams, the NGS market is worth $2 17 billion per year and he hoped that Azco would sell a product that would be a 18 "substantial number two" product for this industry.[16] He estimates that such a 19 second-place product—namely, the MAX-Seq—would earn about 30% of the 20 market, meaning Azco would earn revenue of $600 million per year.[17] He further

---

[12] Plaintiffs' Memorandum of Contentions of Fact and Law ("Plaintiffs' Pretrial Memo"), Dkt. No. 116, at 14.
[13] Grammel Decl., Exhibit K, Expert Report of Brian Buss (August 27, 2014) ("Buss Report"), at 16.
[14] Grammel Decl., Exhibit L, Deposition Transcript of J Adams ("Adams Depo."), at 115:9—116:3; 208:21—210:5.
[15] *See* Complaint, Dkt. No. 1, ¶ 72.
[16] Grammel Decl., Exhibit L, Adams Depo., at 115:9—116:3; 208:21—210:5.
[17] *Id.*

4

projected that Azco would have after-expenses net profit of 15%, amounting to $100 million per year.[18]

Neither IBS nor Azco has ever profitably commercialized and sold DNA sequencers. The highly speculative lost profits alleged by Azco are not based in its financial history or the factual record in this case.

**ARGUMENT**

**I.   Lost profits must be reasonably certain and cannot be speculative.**

**A.   The nature of the parties' relationship shows that Azco is not entitled to lost profits.**

Lost profits may be recoverable as damages for breach of contract only where "the evidence makes reasonably certain their occurrence and event." *Sargon Enterprises, Inc. v. University of Southern California*, 55 Cal. 4th 747, 773-74 (2012) (citation omitted); *Grupe v. Glick*, 26 Cal. 2d 680, 693 (1945); *Resort Video, Ltd. v. Laser Video, Inc.*, 35 Cal. App. 4th 1679, 1697-98 (1995).[19] No damages may be recovered "which are not clearly ascertainable in both their nature and origin." Cal. Civ. Code §§ 3300, 3301. The measure of damages is the amount that will compensate the plaintiff for all the damages proximately caused by the breach. *See* Cal. Civ. Code § 3300.

Several aspects of the parties' relationship show why lost profits are not reasonably certain here.

First, as Azco admits, IBS and Azco had a non-exclusive relationship.[20] IBS could sell its products on its own or through other distributors, and had no obligation to sell a certain percentage of its products through Azco. It is sheer speculation to

---

[18] *Id.*
[19] The requirement for certainty in damages helps protect contracting parties: predictability in potential damages helps to "encourage contractual relations and commercial activity by enabling parties to estimate in advance the financial risks of their enterprise" and so it "plays an important role in our commercial system." *Amelco Electric v. City of Thousand Oaks*, 27 Cal. 4th 228 (2002) (citations omitted).
[20] *See* Plaintiffs' Pretrial Memo, at 4.

5

predict how many units IBS would have sold through Azco, if any, as opposed to selling on its own or other channels. A search of California case law revealed no cases where a court allowed an expert witness to opine about lost profits for breach of a non-exclusive distribution agreement.

Second, IBS had no obligation to continue selling any specific products. There is nothing in the Term Sheet or the parties' communications that obligated IBS to continue to market and sell the MAX-Seq or the MINI-20. Thus any testimony on lost profits necessarily ignores the fact that IBS could discontinue a product line altogether. Just because IBS worked with Azco on a non-exclusive basis does not mean that IBS is required to continue selling a particular product. Products may become obsolete, fail to generate profit, may not fit into a new strategic plan, or may not be well-received in the marketplace. This last point is especially pertinent to the NGS industry, which is heavily competitive and already features large, established companies selling products. Any testimony or evidence of lost profits necessarily ignores IBS's discretion to discontinue or alter its product lines.

Third, evidence of lost profits is irrelevant and inadmissible given the parties' termination rights. Damages must put a plaintiff in as good a position as it would have been if the breach had not occurred. *See Lewis Jorge Contr. Mgmt. v. Pomona Unified School District*, 34 Cal. 4th 960, 967 (2004) (citation omitted). Azco contends that the oral agreement had a perpetual (or, alternatively, a five-year) term, but, for the reasons articulated in IBS's other motions *in limine*, that argument should be excluded: (1) unexpressed subjective understanding of a contract is irrelevant and therefore inadmissible, and (2) an oral agreement that could not be performed within one year violates the Statute of Frauds. *See* IBS's Motion *in Limine* to Exclude Evidence That Would Violate the Statute of Frauds; IBS's Motion *in Limine* to Exclude Evidence of Plaintiffs' Unexpressed Intent (filed simultaneously with this Motion).

1 Azco's alleged damages should be limited to the period before the effective
2 termination date because the only evidence of the parties' expressed intentions
3 regarding term and termination rights is in the two draft Distributor Agreements,
4 which expressly state that either party can terminate with 45 days' notice.[21] If the 45-
5 day notice provision does not apply, then the parties never discussed termination at
6 all and so the California Commercial Code and common law supply that missing
7 provision by providing that the agreement is terminable at will by either party. *See*
8 Cal. Comm. Code § 2209; *Varni Bros. Corp. v. Wine World, Inc.*, 35 Cal. App. 4th
9 880, 890-91 (1995). In either event, future lost profits are uncertain and speculative.

10 Because of the nature of the parties' relationship, any testimony or evidence
11 that projects sales that might have occurred in the future is too uncertain to be
12 probative. To the contrary, such testimony would only confuse the issues, mislead
13 the jury, and would unduly delay the determination of the real issues in this case. *See*
14 FED. R. EVID. 403.

**B.  Because IBS and Azco were small companies with no track record of sales, any testimony about Azco's lost profits is too speculative.**

17 A plaintiff may not recover lost profits on the basis of "speculative" or
18 unfounded "assumptions," "unreasonable comparisons," or "unexplained
19 projections." *Kids' Universe v. In2Labs*, 95 Cal. App. 4th 870, 885-88 (2002).
20 Where a business is not yet firmly established, "damages for perspective profits that
21 might otherwise have been made from its operation are not recoverable for the reason
22 that their occurrence is uncertain, contingent and speculative." *Sargon*, 55 Cal. 4th at
23 774; *see also Greenwich S.F., LLC v. Wong*, 190 Cal. App. 4th 739 (2010); *Parlour*
24 *Enterprises v. Kirin Group, Inc.*, 152 Cal. App. 4th 281 (2007).

25 Here, no lost profits can be shown with any reasonable certainty. *See Sargon*,
26 55 Cal. 4th at 773-74. IBS and Azco were both new companies with no track record

---

[21] *See* Order on Summary Judgment, at 4.

7

of profitably selling DNA sequencing instruments. To the contrary, IBS was just starting to bring its technology to market, while Azco was a self-described "used instruments" company that was struggling to keep its doors open. Azco sold one IBS product over the parties' 16-month relationship. To the extent that Azco had any limited experience selling DNA sequencers, it had failed. Before working with IBS, Azco did try to sell one other DNA sequencer, called the Polonator, but was not successful or profitable—in fact, the Polonator would catch on fire and was the subject of another lawsuit.[22]

The parties also had no track record of selling IBS's newly developed instruments. Over the parties' 16-month relationship, Azco sold one MAX-Seq, and there was a problem with that instrument.[23] IBS discontinued the MAX-Seq line altogether in July 2012.[24] IBS only began to make "early access" beta versions of the MINI-20 available in early 2012, with IBS selling one MINI instrument to the University of New Mexico in January 2012.[25] IBS terminated its relationship with Azco not long after, in July 2012. This narrow window of time, with so few sales, cannot reliably serve as the basis for lost profits. This is not a situation where a manufacturer had a track record of success with one distributor, terminated that distributor, and then began working with a second and continued the track record of success. To the contrary, Azco sold one MAX-Seq in 16 months (missing all of its own sales targets) and then IBS discontinued the product line altogether. It would be pure speculation to guess how many sales Azco would have made in the future. *See Parlour*, 152 Cal. App. 4th at 288.

---

[22] *See* Grammel Decl., Exhibit C.
[23] Grammel Decl., Exhibit A, Buss Depo., at 114:4-15.
[24] Order on Summary Judgment, at 5.
[25] Grammel Decl., Exhibit I.

8

### C. J Adams should not be allowed to speculate about Azco's lost profits.

Plaintiff J Adams, or any other lay witness, should not be allowed to provide lay opinion testimony about the potential lost profits because his testimony would be based purely on speculation. Lay witnesses, particularly business owners, are sometimes allowed to give opinion testimony about their business's lost profits, but not when that testimony is speculative. *See Von Der Ruhr v. Immtech International*, 570 F.3d 858, 862-66 (7th Cir. 2009) (affirming motion *in limine* to exclude lay witness testimony about lost profits from the plaintiff's president as too speculative); *US Salt, Inc. v. Broken Arrow, Inc.*, 563 F.2d 687, 690-91 (8th Cir. 2009) (same); *Zenith Electronics Corp. v. WH-TV Broadcasting Corp.*, 395 F.3d 416, 420 (7th Cir. 2005) (excluding lay testimony about plaintiff's internal projections to prove lost profits).

Under the Federal Rules of Evidence, a lay witness from the plaintiff cannot simply rely on internal projections or speculative forecasts. Reliable testimony on lost profit damages "depend[s] on more than say-so, whether the person doing the saying is a corporate manager or a putative expert." *Zenith*, 395 F.3d at 420. In *Zenith*, the plaintiff sought to introduce testimony about its potential lost profits, using its internal sales projections. The court soundly rejected this self-serving testimony, finding that "[l]ike many other internal projections, these represent hopes rather than the results of scientific analyses." *Id.* Likewise in *Parlour*, where the court rejected the use of internal projections to show lost profits, even though the defendant discussed the numbers with the plaintiff and acknowledged they were optimistic but not necessarily inaccurate. 152 Cal. App. 4th at 289. The court found that "the projections must nevertheless be based on *facts*, that are substantially similar to the lost business opportunity." *Id.* (emphasis original); *see also Von Der Ruhr*, 570 F.3d at 863 (rejecting allegation that a product in development could have achieved a certain market share without objective market data as evidence).

9

1    Here, Plaintiffs also claim millions of dollars in lost profits purely on their say-
2 so. Plaintiffs point to internal projections, both IBS and Azco's, to show that the
3 companies hoped to sell the MAX-Seq and MINI-20 successfully. But these
4 numbers, like in *Zenith* and *Parlour*, were the parties' "hopes rather than the results
5 of scientific analyses." Using forecasts to predict the future does not rise to the
6 "reasonable certainty" that California law requires in order to win lost profit
7 damages, especially where the business is not yet firmly established. *See Sargon*, 55
8 Cal. 4th at 774; *see also Greenwich*, 190 Cal. App. 4th 739; *Parlour Enterprises*, 152
9 Cal. App. 4th at 281. Instead of using the actual sales numbers from the IBS-Azco
10 relationship, Plaintiffs seek lost profits based on outdated projections.

11   Furthermore, Mr. Adams should not be allowed to opine that Azco could have
12 achieved the second-highest market share in the industry. *See Von Der Ruhr*, 570
13 F.3d at 863-65. This claim is completely without foundation—Azco had never
14 profitably sold an NGS sequencer, there is no market analysis to support Mr.
15 Adams's view, and Azco failed to meet even its own lowered sales targets.

16   Lay testimony on lost profits requires more than the plaintiff's "say-so" and so
17 no lay witness should be allowed to give their opinion about Azco's lost profit
18 damages.

19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

## CONCLUSION

Permitting Mr. Adams, Mr. Buss, or any other witness to argue to the jury that Plaintiffs have lost profit damages would be unfairly prejudicial to IBS. Such testimony lacks sufficient foundation in the facts and is unreliable. *See* FED. R. EVID. 702. Plaintiffs' claims of lost profits, and the amounts that Plaintiffs have claimed, are based purely on speculation and have no foundation in Azco's actual financial or sales history. The Court should exclude testimony about lost profits as speculative and unfairly prejudicial to IBS. FED. R. EVID. 401; FED. R. EVID. 403.

Dated: August 31, 2015

Respectfully Submitted,

MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC

By *s/Justin S. Nahama*
Justin S. Nahama, Esq.

Matthew C. Hurley (*pro hac vice*)
Brian P. Dunphy (*pro hac vice*)
Sean Grammel (*pro hac vice*)
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC
One Financial Center
Boston, MA 02111
Telephone: (617) 542-6000
Facsimile: (617) 542-2241

Email: dtpascucci@mintz.com
jsnahama@mintz.com
mhurley@mintz.com
bdunphy@mintz.com
smgrammel@mintz.com

*Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of San Diego, State of California, and am not a party to the above-entitled action.

On August 31, 2015, I filed a copy of the following document(s):

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF IBS's MOTION *IN LIMINE* TO EXCLUDE EVIDENCE ABOUT PLAINTIFFS' LOST PROFITS**

by electronically filing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Brian Dunphy | bdunphy@mintz.com |
| Daniel Thomas Pascucci | dpascucci@mintz.com, Docketing@mintz.com, kjenckes@mintz.com |
| Eric J. Eastham | ejeastham@mintz.com, docketing@mintz.com, jsnahama@mintz.com, kasteinbrenner@mintz.com, kjenckes@mintz.com |
| Justin S. Nahama | JSNahama@mintz.com, docketing@mintz.com, KASteinbrenner@mintz.com |
| Maria C Severson | mseverson@amslawyers.com, mbyrnes@amslawyers.com |
| Mark C. Mazzarella | mmazzarella@mazzlorenz.com, daral@mazzarellalaw.com, lsanders@mazzlawgroup.com, pam@mazzarellalaw.com |
| Matthew C. Hurley | MCHurley@mintz.com |
| Michael J Aguirre | maguirre@amslawyers.com, mbyrnes@amslawyers.com |
| Sean Grammel | smgrammel@mintz.com |

Executed on August 31, 2015, at San Diego, California. I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

42984057v.2

*s/Justin Nahama*
Justin Nahama

1

3:12-CV-02599-BEN-DHB